**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
MICHAEL AKOSILE,                              )
                                              )
                   Plaintiff,                 )
                                              )
            v.                                )        Civil Action No. 09-173 (RBW)
                                              )
ARMED FORCES                                  )
RETIREMENT HOME,                              )
                                              )
                   Defendant.                 )
_____)


## MEMORANDUM OPINION

Plaintiff Michael Akosile, proceeding pro se, brings this action against his former

employer, the Armed Forces Retirement Home ("Retirement Home"), alleging libel by his

former supervisor and violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

2000e-2, 2000e-3 (2006).  See Motion for Ame[n]dment to the Case ("Am. Compl.") 1–2.  The

Defendant's Motion for Summary Judgment ("Def.'s Mot.") and the plaintiff's Motion to

Disallow the Deposition (Statement) Given by the Plaintiff for this Case as Part of the Legal

Document ("Pl.'s Mot.") are now before the Court.  Upon consideration of the parties'

submissions,[1] the Court concludes for the following reasons that the defendant's motion must be

granted and the plaintiff's motion must be denied.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."); (2) the Defendant's Statement of Material Facts as to Which There Is No Genuine Dispute ("Def.'s Facts"); (3) the Plaintiff's Opposition to the Defendant's Motion for Summary Jud[g]ment ("Pl.'s Opp'n"); (4) the Defendant's Reply in Support of Defendant's Motion for Summary Judgment ("Def.'s Reply"); and (5) the Defendant's Opposition to Plaintiff's Motion to Disallow the Deposition (Statement) Given By the Plaintiff for This Case ("Def.'s Opp'n").

# I. BACKGROUND

The following facts are undisputed.[2]  The plaintiff, a Nigerian man, was employed by the Retirement Home as a Licensed Practical Nurse from September, 2001 to June, 2008.  Def.'s Facts ¶¶ 2–3.  The plaintiff was not a member of a collective bargaining unit at any point during his tenure at the Retirement Home.  Id. ¶ 26.  In 2005, prior to the events giving rise to this case, the plaintiff and several other nurses filed a complaint of discrimination based on national origin against the defendant.  Id. ¶ 103.   The complaint was settled on July 7, 2006.  Id.

In the late summer or early fall of 2006, the plaintiff was transferred to the evening shift at the Retirement Home's Long Term Care Unit.  Id. ¶¶ 14, 21.  His direct supervisor while in this position was Clinical Supervisory Nurse Shirley Washington.  Id. ¶ 21.  During this time, Elizabeth Weathington served as the Director of Nursing.  Id. ¶ 5.  Except for a brief period of time, the plaintiff was the only male nurse assigned to his unit.  Id. ¶ 24.

The incidents forming the basis of the plaintiff's claims began on February 15, 2007, when the plaintiff received a memorandum from Weathington regarding overtime approval

---

[2] The facts included here are taken from the Defendant's Statement of Material Facts as to Which There Is No Genuine Dispute unless noted otherwise.  The plaintiff has not filed a separate statement of material facts as to which there is a genuine dispute, as required by this Court's local rules, Local Civ. R. 7(h), and has not disputed most of the facts cited by the defendant, see generally Pl.'s Opp'n.  Federal Rule of Civil Procedure 56 and this Court's local rules permit the Court to consider a fact as undisputed if the non-movant fails to address it.  See Fed. R. Civ. P. 56(e)(2); Local Civ. R. 7(h).  And, in accordance with Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), the defendant provided the following notice to the plaintiff:

> Plaintiff should take notice that any factual assertions contained in the documents attached to this Motion may be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in such documents.  See Neal v. Kelly, 963 F.2d 453, 456–57 (D.C. Cir. 1992); LCvR 7(h); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."); see also Fox v. Strickland, 837 F.2d 507 (D.C. Cir. 1988).

Def.'s Mot. at 1–2.  This notice by the defendant being in compliance with the requirements of Neal, the Court will consider the facts set forth by the defendant to be undisputed unless the plaintiff presented opposing facts in his opposition.

procedures, which was sent because "[i]t ha[d] come to [her] attention" that the plaintiff and two female nurses had contacted the Bureau of Public Debt[3] alleging that they were not being paid for overtime work.  Id. ¶ 32; Def.'s Mem. Ex. N (Memorandum from Weathington); see Am. Compl. ¶ 1.

That same day, the plaintiff worked an evening shift at the Retirement Home.  See Def.'s Facts ¶ 43.  The next day, the supervisor for the night shift reported to Washington, Weathington, and the Assistant Director of Nursing that one of the plaintiff's patients from his evening shift "was in 'respiratory distress' and 'almost blue,'" and that several problems with the patient's care had been identified.  Id. ¶¶ 43, 45.  Washington spoke to the plaintiff regarding the night shift supervisor's report later that day in the presence of a male nurse, Michel Brou, who Washington asked to witness the discussion.  Id. ¶¶ 49, 50.  Brou wrote a memorandum following the meeting indicating that Washington tried to discuss the issues identified in the report with the plaintiff, but the plaintiff interrupted her, was consistently "argumentative [and] disruptive" during the meeting, even when asked to stop acting in this manner, and that Washington eventually asked the plaintiff to leave the area "when he continued to be argumentative and loud after he went into the hall."  Id. ¶ 52 (quoting Def.'s Mem. Ex. V (Statement of Michel Brou)).  The plaintiff disputes the accuracy of the allegations regarding his care for the patient, Am. Compl. ¶ 4, but does not dispute the description of his or Washington's behavior during the meeting, see generally Pl.'s Opp'n.  The plaintiff reported Washington's alleged "false accusation" that he failed to properly care for a patient to Weathington, but "nothing was done."  Pl.'s Opp'n at 6.

---

[3] The Bureau of Public Debt is responsible for human resources services for the Retirement Home.  See Def.'s Facts ¶ 32.

On March 25, 2007, the plaintiff arrived at his unit late for his shift, and not dressed in his required uniform. Def.'s Facts ¶ 56. Ms. Washington observed the plaintiff arriving late and out of uniform and "pulled Plaintiff to the side . . . , talked with him in a low voice [about being late], and . . . Plaintiff repeatedly responded to Ms. Washington in a loud voice before Ms. Washington asked Plaintiff to leave for the day." Id. ¶¶ 57, 59. After calling three nurses in order to find someone to work the plaintiff's shift after he was sent home, Washington replaced the plaintiff on the March 25 shift with a female coworker. See Def.'s Facts ¶¶ 61–62; see also Am. Compl. ¶ 4. The plaintiff did not report to work for his scheduled shifts during the following week. Def.'s Facts ¶ 65. Upon the advice of a human resources representative, Weathington placed the plaintiff on paid administrative leave "until she could hear what Plaintiff had to say about what had happened on March 25, 2007." Id. Under Retirement Home policy, an employee is placed on administrative leave under such circumstances at the defendant's discretion. Id. ¶ 64.

The defendant contends that the plaintiff was placed on administrative leave for one day, but due to an error by the Retirement Home timekeeper, the plaintiff's status was changed from paid administrative leave to paid annual leave for the period of March 27–30. Id. ¶ 66 n.3; Def.'s Mem. Ex. Z (Human Resources Records for the Plaintiff) at 2; Def.'s Mem. Ex. AA (Earnings and Leave Records for the Plaintiff) at 5. The plaintiff asserts that he received no pay for the period of March 27–29, but he has provided no evidence to support this claim. Am. Compl. ¶ 4. The plaintiff alleges that two female nurses were previously paid when placed on administrative leave. Pl.'s Opp'n at 3; see also Am. Compl. ¶ 4.

Following the incident on March 25, the plaintiff did not return to the Retirement Home to work until April 25, 2007. Def.'s Facts ¶ 63. After several attempts to reach the plaintiff to speak with him about the incident on March 25, the plaintiff met with Weathington and the

Retirement Home's Director of Health Care Services on March 30, 2007.  Id. ¶¶ 68–69.  The

plaintiff did not return to work after this meeting, however.  Id. ¶ 70.  Subsequently, between

April 1–3, the plaintiff called the Retirement Home twice to report that he was sick and unable to

work.  Id. ¶¶ 71, 71 n.4.  He was advised during both calls that he needed to speak with

Weathington regarding extended sick leave.  Id. ¶¶ 71, 71 n.4.

Under the defendant's policy regarding extended leave, any person requesting leave of

more than three days must speak with either the Director or Assistant Director of Nursing and

submit medical documentation.  Id. ¶¶ 72, 78.  Although the plaintiff was aware of this policy,

id. ¶ 78, he did not contact Weathington regarding his need for extended leave, see id. ¶ 75.  On

April 16, 2007, the defendant sent the plaintiff a letter stating the following:

> I am sending this letter directing you to report to work immediately on the day
> shift schedule that you have been placed.  You are also directed to contact me
> immediately upon receipt of this letter.  As of today, April 16, 2007, I have placed
> you on Absence Without Leave (AWOL).  Please note a charge of AWOL can be
> cause for disciplinary action up to and including removal from the Armed Forces
> Retirement Home.

Def.'s Mem. Ex. FF (April 16, 2007 Letter); see also Def.'s Facts ¶ 76.  On April 16, the plaintiff

again called to report that he was sick, and was again advised to speak with Weathington.  Def.'s

Facts ¶ 74.  On April 17, the defendant sent the plaintiff a second letter stating that the plaintiff

must submit written medical documentation within seven days from the date of receipt of the

letter in order to substantiate the reason for his extended leave or else be subject to a charge of

AWOL.  Id. ¶ 80; Def.'s Mem. Ex. GG (April 17, 2007 Letter).  Weathington did not receive a

response from the plaintiff until April 27, which contained a letter from a physician indicating

that the plaintiff had been treated on April 20 and would be fit to return to work on April 24.

Def.'s Facts ¶¶ 81–82.  At some point, the plaintiff submitted additional medical documentation

to the defendant which covered the entire time period that the plaintiff was on sick leave.  See id. ¶ 83; Def.'s Mem. Ex. JJ (Medical Documentation).

Over the course of his absence, the plaintiff received 40 hours of paid sick leave and 40 hours of paid annual leave for the period of April 1–14, and was assessed 40 hours of leave without pay for the period of April 16–21, Def.'s Facts ¶ 84, because he had no annual leave or sick leave remaining, id. ¶ 85.  The plaintiff was not actually charged as AWOL at any time during this period despite Weathington's April 16, 2007 letter to the contrary.  Def.'s Mem. Ex. AA (Kirstina Burchard Affidavit) at 2; Def.'s Mem. Ex. E (Weathington Affidavit) at 7 ("[The plaintiff] was not actually placed on AWOL because he finally submitted the documentation needed and then he was given sick leave for the time he had been out.").

Also in April 2007, Weathington transferred the plaintiff from the evening to the day shift on the Long Term Care Unit.  Def.'s Facts ¶ 86.  She did so because there was a vacancy on the day shift, which she was temporarily covering by assigning staff from other units.  Id. Additionally, "there was a need for a nurse with Plaintiff's experience on the day shift, and [she] did not believe that Plaintiff would be opposed to the shift change."  Id.  Under Retirement Home policy, nurses are typically given two weeks' notice of a shift change.  Pl.'s Opp'n at 5. Weathington did not give the plaintiff the customary two weeks' notice of the shift change because the shortage on the day shift needed to be filled immediately and thus was considered an emergency.  Def.'s Facts ¶ 93.  Weathington "believes that it was an oversight" not to send the plaintiff a letter regarding the shift change.  Id. ¶ 93 n.5.  The plaintiff disputes that his "[a]brupt [and] permanent transfer from [the] evening shift to a day shift" without advance notice was necessary, contending that "there were enough nursing staff on the day shift at the time."  Am. Compl. ¶ 4.

Following the plaintiff's return to work at the Retirement Home, Washington completed the plaintiff's performance appraisal for the period from July 2, 2005 to December 31, 2006. Def.'s Facts ¶ 94. Washington rated the plaintiff's performance as "Exceeds Fully Successful," and recommended him for a $750.00 award, which he ultimately received. Id. ¶ 95. She signed his appraisal on May 22, 2007, and the plaintiff received a copy and signed it on May 24, 2007. Id. ¶ 94; Def.'s Mem. Ex. LL (Performance Appraisal) at 1. In his amended complaint, however, the plaintiff alleges that Washington refused to give him a copy of his performance appraisal. Am. Compl. ¶ 4.

At some point during this time period, the plaintiff requested a transfer from the Long Term Care Unit because "his immediate supervisor was threaten[ing] and harassing him." Pl.'s Opp'n at 6; see also Am. Compl. ¶ 4. The plaintiff's request was denied "with no justification." Pl.'s Opp'n at 6.

The plaintiff subsequently instituted this suit, alleging libel, harassment, discrimination based on sex in violation of Title VII of the Civil Rights Act, and a Title VII retaliation claim resulting from the discrimination complaint he brought in 2005.[4] Am. Compl. ¶¶ 1–4. The defendant has now moved for summary judgment on all counts. Def.'s Mot. at 1. In addition to his opposition to summary judgment, the plaintiff filed a motion asking the Court to deny the defendant's use of the deposition taken of him during discovery in this case, alleging that the deposition transcript is a misrepresentation of what transpired and is therefore misleading. Pl.'s Mot. at 1.

---

[4] The plaintiff includes "[w]rongful placement o[n] administrative leave without pay from March 27–29, 2007, wrongful placement on AWOL (Absent Without Official Leave) for some days in April of 2007" as a separate cause of action in his amended complaint. Am. Compl. ¶ 3. Since the plaintiff cites no legal basis for this claim, and mindful of its duty to construe pro se pleadings liberally, Atherton v. Dist. of Columbia Office of Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009), the Court will consider these allegations as part of the plaintiff's discrimination claim, as his opposition suggests, see Pl.'s Opp'n at 4.

## II. STANDARD OF REVIEW

Under Rule 56, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citations omitted).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact, and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (second omission in original) (internal quotation marks and citation omitted).  "Conclusory allegations unsupported by factual data will not create a triable issue of fact." Pub. Citizen Health Research Grp. v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal brackets and quotation marks omitted).  Indeed, to withstand a properly supported motion for summary judgment, the nonmoving party must cite materials in the record—such as depositions, documents, or declarations—and show that the materials cited establish a genuine dispute of material fact.  See Fed. R. Civ. P. 56(c)(1)(A)-(B).

Thus, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (citations omitted).

Finally, although filings by a pro se litigant "must be held to less stringent standards than [those] drafted by lawyers," see Atherton v. Dist. of Columbia Office of Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009), this latitude "does not constitute a license for a plaintiff filing pro se to ignore the Federal Rules of Civil Procedure," Moore v. Agency for Int'l Dev., 994 F.2d 874, 876 (D.C. Cir. 1993). Thus, while a court has an obligation to construe a pro se plaintiff's filings liberally, Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999), a pro se litigant "cannot generally be permitted to shift the burden of litigating his case to the courts, nor to avoid the risks of failure that attend his decision to forego expert assistance," Dozier v. Ford Motor Co., 702 F.2d 1189, 1194 (D.C. Cir. 1983) (Scalia, J.).

### III. ANALYSIS

#### A.  Exclusion of the Plaintiff's Deposition

Because exclusion of the plaintiff's deposition testimony would bear on the Court's analysis of the propriety of summary judgment, the Court must first address the plaintiff's motion to exclude his deposition from the Court's consideration before turning to the merits of the defendant's motion. The plaintiff moves the Court to exclude the transcript of his April 30, 2012 deposition because the transcript purportedly "contain[s] misrepresentation[s] of what [he] said during the deposition," and is therefore "misleading." Pl.'s Mot. at 1. The plaintiff provides neither specific examples of misrepresentations contained in the transcript nor evidence supporting his allegation. See id. The defendant argues in response that exclusion is inappropriate because the plaintiff was provided the opportunity to review the transcript following his deposition and failed to submit any proposed changes to the transcript. Def.'s

Opp'n at 3–4.  In support of its opposition, the defendant submitted an affidavit from Peter K.

Shonerd, the production manager of the agency that produced the transcript of the plaintiff's

deposition, attesting that he sent the plaintiff a letter "informing him that a copy of the deposition

transcript was available for purchase or to review at [the agency's] office and that [the plaintiff]

had thirty days in which to review it and notify [the agency] of any errors or corrections."  Def.'s

Opp'n Ex. B at 1–2.  Shonerd stated that the plaintiff reviewed the transcript at the agency's

office on May 30 and 31, 2012, and was then loaned a copy of the transcript so that he could

continue to review it without returning to the agency's office.  Id.  Shonerd confirmed that the

plaintiff was given errata sheets in order to note any errors or corrections to the transcript, and

that he never submitted an errata sheet to the agency indicating that the transcript contained any

inaccuracies.  Id.

Federal Rule of Civil Procedure 30 provides that upon request, a deponent is permitted to

review the transcript of his deposition and "if there are changes in form or substance, to sign a

statement listing the changes and the reasons for making them" within thirty days of notification

that the transcript is available. Fed. R. Civ. P. 30(e).  The defendant has submitted evidence that

the plaintiff was informed of the procedure for reviewing and correcting his deposition transcript,

reviewed the transcript, and failed to submit any changes.  Def.'s Opp'n Ex. B at 1–2.  The

plaintiff has presented nothing more than a self-serving allegation that the transcript is

inaccurate, and does not dispute the defendant's assertion that he was given an opportunity to

review the transcript and did not submit any corrections.  Having been informed of the process

provided by the Federal Rules of Civil Procedure for correcting his deposition transcript and yet

failing to avail himself of it, the plaintiff cannot now assert that his deposition testimony should

be excluded because it contains unspecified misrepresentations.  Accordingly, the Court denies

the plaintiff's motion and will consider the portions of the plaintiff's deposition testimony cited

by the defendant in its motion as authorized by the Federal Rules of Civil Procedure.  <u>See</u> Fed.

R. Civ. P. 32(a)(3).

### B.  Summary Judgment

#### 1.  Libel Claim

The plaintiff asserts a common law libel claim against the defendant based on the

February 15, 2007 letter from Weathington to the plaintiff and two other nurses regarding the

Retirement Home's procedures for approving overtime work.  <u>See</u> Am. Compl. ¶ 1; Def.'s Facts

¶ 32.  The defendant argues that the claim must be dismissed because the United States has not

waived its sovereign immunity against claims of libel.  Def.'s Mem. at 5–6.  The Court agrees.

Under the doctrine of sovereign immunity, the United States, as a sovereign, generally cannot be

sued unless it consents.  <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980) (citation omitted).

A court cannot find that the United States has consented to be sued unless Congress has clearly

and unequivocally waived the United States' immunity.  <u>Mitchell</u>, 445 U.S. at 538 (citation

omitted).  The Federal Tort Claims Act waived the United States' immunity from suit for some

torts.  <u>Johnson v. United States</u>, 547 F.2d 688, 691 (D.C. Cir. 1976) (quoting <u>Dalehite v. United</u>

<u>States</u>, 346 U.S. 15, 17 (1953)).  Claims of libel, however, are explicitly excluded from the

waiver of immunity granted in the Act.  28 U.S.C. § 2680(h) (2006).  Since the United States has

not waived its sovereign immunity for libel claims, the plaintiff's libel claim is barred.

Therefore, the Court must grant the defendant's motion for summary judgment on this claim.

#### 2.  Harassment Claim

The plaintiff alleges that he was subject to harassment by Washington and Weathington

in violation of Title VII of the Civil Rights Act of 1964, the agreement between the Retirement

Home and the American Federation of Government Employees, Local 3090, and "job policy."
Am. Compl. ¶ 2.  In the plaintiff's view, the conduct comprising this harassment are
Washington's February 16, 2007 "false accusation" that he failed to administer medication to a
patient; her conversation with him about his lateness and her decision to send him home on
March 25, 2007; and his allegation that he was charged as AWOL while on administrative leave
and later while on sick leave.  Pl.'s Opp'n at 6–7.  The plaintiff contends that he "was subjected
to a daily hostile working environment as [his] immediate supervisor was so intoxicated with
abus[e] of power that [she] subjected the plaintiff into [sic] a daily panic and fear on the job."  Id.
at 7.

   The plaintiff's amended complaint and his opposition to the defendant's summary
judgment motion suggest that he does not view his sex as the motive for the alleged harassment,
since he includes no reference to his sex as the motive, as he repeatedly indicates when
discussing his discrimination claim.  Compare Am. Comp. ¶ 2 (entitled "Harassment on the job
by both Ms. Shirley Washington . . . and Ms. Elizabeth Weathington"), and Pl.'s Opp'n at 6–7
(indicating that Washington harassed him because she was "intoxicated with abus[e] of power"),
with Am. Compl. ¶ 4 (entitled "Sex discrimination and Retaliation of former EEO complaint"),
and Pl.'s Opp'n at 3–6 (entitled "Intentional Sex discrimination" and including comparisons
between his treatment and the treatment of female nurses).  In addition to failing to explicitly
reference his sex as the motive for the alleged harassment when discussing his harassment claim,
the plaintiff instead identifies Washington's abuse of her supervisory position as the reason for
the harassment.  Pl.'s Opp'n at 7.  To the extent that the plaintiff's harassment claim is not
premised on his membership in a class protected under Title VII, the Court must grant summary
judgment on the claim under Title VII because the harassment alleged by the plaintiff was not

"because of [his] race, color, religion, sex, or national origin," as required by the statute.  42

U.S.C. § 2000e-2 (emphasis added); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (cause

of action for hostile work environment under Title VII based on the "congressional intent to

strike at the entire spectrum of disparate treatment of men and women in employment, which

includes requiring people to work in a discriminatorily hostile or abusive environment")

(emphases added) (citations and quotation marks omitted).

        To the extent that the plaintiff's allegations can be construed as alleging a hostile work

environment claim under Title VII, summary judgment is nonetheless warranted.  In order to

prevail on a claim of hostile work environment under Title VII, a plaintiff must show that "the

workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive

working environment."  Harris, 510 U.S. at 21.  In order to determine whether an employee's

work environment is "hostile" or "abusive," a court must consider all of the circumstances,

including "the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance."  Id. at 23.  The conduct alleged "must be extreme," and

"isolated incidents (unless extremely serious) will not amount to discriminatory changes in the

terms and conditions of employment."  George v. Leavitt, 407 F.3d 405, 416 (D.C. Cir. 2005)

(quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

        The plaintiff has not met this standard.  The incidents cited by the plaintiff as

demonstrating the "severe or pervasive" pattern of conduct required under Harris include one

instance of criticism that the plaintiff alleges was inaccurate, his supervisor's decision to

confront him regarding his lateness and to send him home when he became argumentative, and

13

the defendant's alleged charge that the plaintiff was AWOL at points during his absence in March and April 2007. Pl.'s Opp'n at 6–7. Even assuming that these allegations occurred as alleged,[5] these actions, individually or taken together, were neither sufficiently severe nor pervasive so as to "alter the conditions of [the plaintiff's] employment." Harris, 510 U.S. at 21. Three isolated incidents over the course of three months can hardly be characterized as "pervasive." In George v. Leavitt, for example, the Court of Appeals found allegations that the plaintiff was told by three different individuals to "go back where she came from," and had several unpleasant confrontations with co-workers to be "exactly the sort of 'isolated incidents' that the Supreme Court has held cannot form the basis for a Title VII violation." 407 F.3d at 416–17. The conduct alleged by the plaintiff here is even less consistent than the series of incidents that was deemed insufficient in George. See also Badibanga v. Howard Univ. Hosp., 679 F. Supp. 2d 99, 103–104 (D.D.C. 2010) (finding that criticism of the plaintiff's accents, and statements that the plaintiff could be easily replaced by an American and that his supervisor would not hire other African individuals were "isolated incidents" and thus insufficiently severe or pervasive to support a hostile work environment claim).

Moreover, no reasonable jury could find the conduct alleged by the plaintiff—an AWOL charge and several negative interactions with a supervisor—to be the sort of "extreme" conduct required to prevail on a hostile work environment claim. Negative interactions with supervisors, even when a supervisor yells and uses profanity, generally do not meet this standard. See Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (finding no hostile work environment where the plaintiff's supervisor repeatedly criticized and negatively reviewed the plaintiff's

---

[5] Documentation attached to the defendant's motion demonstrates that the plaintiff was not, in fact, charged as AWOL—an affidavit by Weathington, in which she attests that the plaintiff was not actually charged as AWOL because he submitted medical documentation to justify his absence, and an affidavit by Kristina Burchard, a Human Resources Specialist with the Bureau of Public Debt, in which she attests that a review of the plaintiff's earnings and leave records shows that he was not charged as AWOL from March 18, 2007 to May 26, 2007. Def.'s Mem. Ex. AA (Kristina Burchard Affidavit) at 3; Def.'s Mem. Ex. E (Weathington Affidavit) at 7.

performance, imposed leave restrictions on the plaintiff, engaged in verbal altercations with the plaintiff involving profanity, and threatened the plaintiff's arrest).  The AWOL charge, while more serious, is also insufficient alone or in combination with the plaintiff's other allegations to support a claim of hostile work environment.  In <u>Williams v. Spencer</u>, another member of this Court found that allegations that an employee was given an unwarranted negative performance evaluation, was required to provide advance notice of medical appointments, did not receive feedback and an opportunity to improve her performance before termination, and was charged as AWOL while she attended a doctors' appointment were insufficient "when considered alone or cumulatively, [to] meet the demanding standards of a hostile work environment."  883 F. Supp. 2d 165, 180–81 (D.D.C. 2012).  The allegations in this case are similar and likewise are not "sufficiently severe or pervasive to alter the conditions of the victim's employment."  <u>Harris</u>, 510 U.S. at 21.  The plaintiff's allegations are the sort of "ordinary tribulations of the workplace" that are not actionable under Title VII.  <u>Faragher</u>, 524 U.S. at 788.  Accordingly, to the extent that the plaintiff asserts that the motive for the alleged harassment was his gender, the Court concludes that the defendant is nonetheless entitled to summary judgment because the conduct was not sufficiently severe or pervasive to be actionable under Title VII.

The plaintiff also argues that the harassment he alleges is in violation of a collective bargaining agreement between the Retirement Home and the American Federation of Government Employees, Local 3090.  Am. Compl. ¶ 2; Pl.'s Opp'n at 7–8.  The defendant contends that the plaintiff has never been a member of this or any other collective bargaining unit, and has presented the affidavit of a human resources representative from the Bureau of Public Debt, who attests that the plaintiff was not a member of a collective bargaining unit at the Retirement Home, to prove this fact.  Def.'s Facts ¶ 26; Def.'s Mem. Ex. I (Michelle Galland

Affidavit).  The plaintiff disputes this fact, and states that another human resources

representative had previously "confirmed to the plaintiff that the [Licensed Practical Nurses]

were covered under the Local 3090" and "that the issue would be resolved using the Negotiated

Agreement."  Pl.'s Opp'n at 7–8.  In order to avoid summary judgment on a claim for the

purported violation of this collective bargaining agreement, the plaintiff, as the party opposing

summary judgment, must rebut the defendant's factual allegation that he was not a member of a

collective bargaining unit by citing to evidence demonstrating that a genuine dispute exists with

respect to his union membership.  Fed. R. Civ. P. 56(c), (e) (a court may grant summary

judgment if a party "fails to properly address another party's assertion of fact as required by Rule

56(c)," which requires that "[a] party asserting that a fact cannot be or is genuinely disputed must

support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing

that the materials cited do not establish the absence or presence of a genuine dispute"); see

Phoenix Ins. Co. v. West Jersey Air Conditioning & Heating Co., No. 09-5570, 2010 WL

4259174, at *3–4 (E.D. Pa. Oct. 26, 2010) (granting summary judgment to the defendant where

the defendant submitted affidavit of president of company stating that company was not member

of union and the plaintiff responded only with assertions based on "information and statements

obtained from third parties"); see also Sevey v. State of Oregon, No. 03-137-CO, 2005 WL

2078145, at * 6 (D. Or. Aug. 25, 2005) (denying summary judgment because the plaintiff

presented "various documents related to her employment benefits and her union membership,"

which demonstrated a genuine dispute as to the plaintiff's membership in union).  The Court is

not required to accept an allegation unsupported by any evidence in the record at the summary

judgment stage.  See Hussain v. Nicholson, 435 F.3d 359, 365 (upholding grant of summary

judgment when only evidence of discriminatory motive proffered by the plaintiff was the "conclusory allegations in his own affidavit").

Here, the plaintiff has not produced any evidence of his membership in the American Federation of Government Employees, Local 3090, even though such evidence would likely be easily available to him.  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  Accordingly, the Court must grant summary judgment to the defendant on the plaintiff's claim of a violation of the Retirement Home's agreement with the American Federation of Government Employees, Local 3090.

Finally, the plaintiff alleges in his amended complaint and his opposition to the defendant's summary judgment motion that the alleged harassment "was a violation of the job policy."  Am. Compl. ¶ 2; see also Pl.'s Opp'n at 7.  The plaintiff provides no further details concerning the legal basis for this claim in any of his filings, and cites no legal authority to support the position that the Court has jurisdiction over such a claim.  Because the party invoking the Court's jurisdiction bears the burden of proving facts establishing the Court's jurisdiction, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992), the Court must grant summary judgment on the plaintiff's claim that the alleged harassment was "a violation of the job policy."  In sum, because the plaintiff has failed to state a harassment claim under any of the theories he advances, the Court must grant summary judgment to the defendant on the plaintiff's claim.

### 3.   Discrimination Claim

Claims of discrimination under Title VII that rely on circumstantial evidence are analyzed under the familiar three-part framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Under this framework, the plaintiff bears the initial burden of "establish[ing] a prima facie case of . . . discrimination," <u>McDonnell Douglas</u>, 411 U.S. at 802, by providing proof that (1) he is a member of a protected group; (2) that he suffered an adverse employment action; and (3) that the adverse action raises an inference of discrimination, <u>Czekalski v. Peters</u>, 475 F.3d 360, 364 (D.C. Cir. 2007) (citation and quotation marks omitted).  If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant, who must put forth a "legitimate, non-discriminatory reason" for taking the adverse action.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  Once the defendant has proffered such a reason, "the <u>McDonnell Douglas</u> framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination <u>vel non</u>." <u>Czekalski</u>, 475 F.3d at 354 (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142–43 (2000)) (alterations in original).  In order to avoid summary judgment, the plaintiff must show that a reasonable jury could find that the proffered reason was a pretext designed to shield a discriminatory motive.  <u>Stewart v. Ashcroft</u>, 352 F.3d 422, 429 (D.C. Cir. 2003).  In making this determination, a court must consider "(1) the plaintiff's <u>prima facie</u> case; (2) any evidence the plaintiff presents to attack the employer's proffered explanations for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer . . . ." <u>Czekalski</u>, 475 F.3d at 363.

The defendant argues first that the plaintiff has failed to allege an adverse employment action.  Def.'s Mem. at 10–14.  In his opposition to the defendant's request for summary

judgment, the plaintiff asserts several alleged adverse employment actions as the basis of his

discrimination claim: (1) Weathington's placement of the plaintiff on administrative leave on

March 26, 2007, based solely on Washington's account of the incident between her and the

plaintiff; (2) his failure to be paid when he was placed on administrative leave from March 27–

29, 2007; (3) the failure to provide him with two weeks' notice of his transfer from the evening

to the day shift; and (4) the defendant's denial of his request to transfer to another unit.  Pl.'s

Opp'n at 3–6; see also Am. Compl. ¶ 4.  The Court agrees with the defendant that these actions

do not rise to the level of adverse employment actions sufficient to support a claim of

discrimination under Title VII.[6]

An "adverse employment action" sufficient to support a claim of discrimination under

Title VII is "a significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing significant

change in benefits."  Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting Burlington

Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).  In order to satisfy this standard, an employee

must "experience[] materially adverse consequences affecting the terms, conditions, or privileges

of employment or future employment opportunities such that a reasonable trier of fact could find

objectively tangible harm."  Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009).  Thus,

"[p]urely subjective injuries, such as dissatisfaction with a reassignment, or public humiliation or

loss of reputation, are not adverse actions."  Forkkio v. Powell, 306 F.3d 1127, 1130–31 (D.C.

---

[6] Generally once the defendant has proffered a legitimate, non-discriminatory reason for its actions, "the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case."  Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009) (quoting Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008)).  The Court is not prevented, however, from considering whether the plaintiff has alleged an adverse employment action in its determination of whether he has shown that a reasonable jury could find that the adverse employment action was taken for a discriminatory reason.  Czekalski, 475 F.3d at 363–64. Accordingly, the Court will consider whether the plaintiff here has alleged sufficiently adverse actions not to determine whether he has made out a prima facie case, but "because [his] prima facie case is part of the evidence [the Court] must consider in addressing the question of whether he has created a genuine issue of gender discrimination."  Id. at 364 (citation and internal quotation marks omitted).

Cir. 2002) (internal citations omitted).  Indeed, an adverse employment action "in most cases

inflicts <u>direct</u> economic harm."  <u>Douglas</u>, 559 F.3d at 552 (emphasis in original) (quoting

<u>Burlington Indus., Inc.</u>, 524 U.S. at 762).  Title VII does not provide a remedy for "everything

that makes an employee unhappy."  <u>Id.</u> (citation omitted).

       None of the employment actions alleged by the plaintiff rise to the level of an adverse

employment action.  The evidence put forth by the defendant shows that the plaintiff was placed

on administrative leave for one day, for which he was paid, on March 26, 2007, and that he was

placed on annual leave for the remainder of his scheduled work days that week, for which he was

also paid.  Def.'s Mem. Ex. AA (Earnings and Leave Records for the Plaintiff) at 5 (reflecting

eight hours of "other leave," a notation which includes administrative leave, Def.'s Mem. Ex.

AA at 3, and thirty-two hours of annual leave for the time period of March 18, 2007 to March 31,

2007).  Although the plaintiff asserts that he was not paid while he was on administrative leave,

he has provided the Court with no evidence to support this claim, and therefore, the Court must

conclude that the plaintiff received paid administrative leave.  <u>See</u> Fed. R. Civ. P. 56(c), (e) (a

court may grant summary judgment if a party "fails to properly address another party's assertion

of fact as required by Rule 56(c)," which requires that "[a] party asserting that a fact cannot be or

is genuinely disputed must support the assertion by . . . citing to particular parts of materials in

the record . . . or . . . showing that the materials cited do not establish the absence or presence of

a genuine dispute"); <u>Dist. Intown Props., Ltd. P'ship v. Dist. of Columbia</u>, 198 F.3d 874, 878

(D.C. Cir. 1999) ("In deciding whether there is a genuine issue of material fact, the court must

assume the truth of all statements proffered by the non-movant except for conclusory allegations

lacking any factual basis in the record.").

Placement on administrative leave for a short period of time without loss in pay or benefits in order to investigate an allegation of wrongdoing generally does not constitute an adverse employment action.  See, e.g., Joseph v. Leavitt, 465 F.3d 87, 90–91 (2d Cir. 2006) (noting agreement among the Fourth, Fifth, Sixth, and Eighth Circuits that placement on administrative leave with pay during an investigation does not constitute an adverse employment action and holding the same); Brown v. Georgetown Univ. Hosp. Medstar Health, 828 F. Supp. 2d 1, 9 (D.D.C. 2011) (collecting cases from this Court reaching the same conclusion).  Because the plaintiff was paid while on administrative leave, he suffered no loss in pay or benefits from his placement on administrative leave, and the plaintiff's return to work without any apparent consequences from being placed on administrative leave demonstrates that he suffered no detriment from the action.  Therefore, the plaintiff's placement on paid administrative leave for one day does not rise to the level of an adverse employment action.[7]

Nor does either the defendant's failure to provide him with notice of his transfer in April 2007 or the defendant's denial of the plaintiff's request for a transfer constitute adverse employment actions.  While the defendant's failure to provide the plaintiff with two weeks' notice of his schedule change was perhaps inconvenient for the plaintiff, nothing about the failure to provide the customary notice indicates that the defendant's action caused the plaintiff to suffer objectively tangible harm, and the plaintiff has proffered no evidence to show otherwise.  Moreover, the plaintiff's absence from work until April 25 due to his medical issues likely ameliorated any inconvenience caused by the suddenness of the schedule change since he,

---

[7] The mistake by the Retirement Home timekeeper which resulted in the plaintiff's absence from March 27–29 being designated as annual leave rather than paid administrative leave does not change this conclusion.  See Diggs v. Potter, 700 F. Supp. 2d 20, 41 (D.D.C. 2010) (noting that there is no case authority for the proposition that "processing an employee's leave request where the only consequence was that he had to take sick leave instead of workers compensation leave, constitutes an adverse employment action").  The plaintiff suffered no loss in pay from the timekeeper's mistake in recording the leave as annual leave rather than administrative leave, and thus, the mistake does not render the defendant's action adverse.

in fact, had at least some time before he actually began working his new shift. Thus, no reasonable jury could find that the defendant's failure to provide advance notice to the plaintiff of his transfer from the evening to the day shift was an adverse employment action under Title VII.

The Court reaches the same conclusion with respect to the defendant's denial of the plaintiff's request for a lateral transfer to another unit. This Circuit has concluded that a lateral transfer generally does not constitute an adverse employment action:

> A plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which [he] suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of [his] employment or [his] future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. Mere idiosyncrasies are not sufficient to state an injury.

Stewart, 352 F.3d at 426 (quoting Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999), abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) (establishing a broader standard for employment actions in retaliation claims)). While some lateral transfers, such as those which remove an employee's supervisory responsibilities or entail "significantly different responsibilities" may constitute adverse employment actions, Czekalski, 475 F.3d at 364, these circumstances are not present here. The plaintiff's request to transfer to another unit was made because of his dissatisfaction with his immediate supervisor.[8] See Pl.'s Opp'n at 5–6. The defendant's retention of the plaintiff in the day shift on the Long Term Care Unit, thus forcing the plaintiff to continue to work under a supervisor whom he disliked and felt treated him unfairly, is the kind of "purely subjective injur[y]" that does not "affect[] the terms,

---

[8] The Court has already found that Washington's treatment of the plaintiff did not create a hostile work environment under Title VII, and therefore, the plaintiff's request to be transferred must be viewed as a request to avoid the general workplace tribulations of working under a supervisor with whom the plaintiff does not get along, as opposed to working under a supervisor who created a hostile work environment for the plaintiff.

conditions, or privileges of employment or future employment opportunities." See Martin v. Locke, 659 F. Supp. 2d 140, 148 (D.D.C. 2009) (transfer to a new supervisor who is rumored to be "difficult" and has been previously accused of discrimination is not an adverse employment action); cf. Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 849 (D.C. Cir. 2001) ("A mere 'nasty' attitude exhibited by a supervisor is insufficient to establish a hostile atmosphere . . . ."). Accordingly, the defendant's denial of the plaintiff's request for a lateral transfer does not rise to the level of an adverse employment action.

Because the plaintiff is proceeding pro se, the Court will also address the allegations that appear in the amended complaint that are not addressed in the plaintiff's opposition, including the defendant's AWOL charge against the plaintiff, the defendant's failure to provide the plaintiff with a copy of his performance appraisal, and Weathington's "threatening" letter stating that an AWOL charge may lead to the plaintiff's termination. See Am. Compl. ¶ 4. As to the first two allegations, the evidence put forth by the defendant shows that the plaintiff was not actually charged with being AWOL, Def.'s Mem. Ex. AA (Kristina Burchard Affidavit) at 3; Def.'s Mem. Ex. E (Weathington Affidavit) at 7, and was provided with a copy of his performance appraisal, Def.'s Mem. Ex. LL (Performance Appraisal) at 1. The plaintiff has presented nothing that disputes this evidence. With respect to Weathington's April 16 and 17, 2007 letters advising the plaintiff that a charge of AWOL could lead to his termination, the Court sees no objectively tangible harm resulting from this action. The letter merely informed the plaintiff of the consequences of failing to follow the Retirement Home's processes for requesting leave, and was not abusive in tone in any way. See Def.'s Mem. Ex. FF (April 16, 2007 Letter), Ex. GG (April 17, 2007 Letter). Thus, the Court finds that Weathington's letters to the plaintiff regarding his absence from work do not constitute adverse employment actions. The Court

therefore finds that no reasonable jury could find that any of the actions alleged by the plaintiff constitute adverse employment actions, and accordingly grants summary judgment to the defendant on the plaintiff's claim of discrimination under Title VII.

### 4.   Retaliation Claim

Finally, the plaintiff asserts that the defendant retaliated against him for bringing his 2005 discrimination complaint in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.  Am. Compl. ¶ 4; Pl.'s Opp'n at 8.  The plaintiff's amended complaint states only that the plaintiff suffered "[v]arious retaliations due to a former EEO complaint."  Am. Compl. ¶ 4. The plaintiff reiterates this allegation in his opposition to the defendant's summary judgment motion, but provides no factual details to support the allegation.  Pl.'s Opp'n at 8 ("the director of nursing engaged in various way[s] of retaliation which was the precursor to this case . . . "). In order to establish a prima facie case of retaliation, the plaintiff must demonstrate that "(1) he engaged in statutorily protected activity [under Title VII]; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two."  Jones, 557 F.3d at 677.  The plaintiff's allegation amounts to no more than an unsupported conclusory statement and is therefore insufficient to survive summary judgment.  See Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir 1999) (upholding summary judgment on retaliation claim when the only evidence of retaliatory motive was the plaintiff's unsupported assertion).  Moreover, the plaintiff has neither identified the materially adverse action taken by the defendant, nor pointed to any evidence establishing a causal link between his prior discrimination complaint and any unfavorable treatment he may have received, and thus, his retaliation claim fails.  Therefore, the Court must grant summary judgment on this claim.

**IV. CONCLUSION**

For the foregoing reasons, the Court concludes that it must deny the plaintiff's motion to exclude his deposition, and grant the defendant's motion for summary judgment.

**SO ORDERED** this 11th day of April, 2013.[9]

REGGIE B. WALTON
United States District Judge

---

[9] An Order consistent with this Memorandum Opinion will be issued contemporaneously.